UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MELANIE ADAMS,<br><br>Plaintiff,<br>v.<br><br>RENAISSANCE RX, UTC LABORATORIES, L.L.C., TPG GROWTH, LLC, DR. TARUN JOLLY, BARRY GRIFFITH, PATRICK RIDGEWAY and DOUGLAS TERRY,<br><br>Defendants. | Case No. 1:15-cv-1401<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR DAMAGES**

Plaintiff, Melanie Adams, by counsel, Delk McNally, LLP, for her Complaint for Damages against Defendants, Renaissance RX, UTC Laboratories, L.L.C., TPG Growth, LLC, Dr. Tarun Jolly, Barry Griffith, Patrick Ridgeway and Douglas Terry (collectively "Defendants"), hereby alleges and states as follows:

**Parties, Jurisdiction and Venue**

1. Plaintiff, Melanie Adams ("Adams"), is and has been at all times relevant hereto a resident of Hamilton County, Indiana. Adams is a member of a protected class—female over the age of forty years old.

2. Defendant, Renaissance RX ("Renaissance"), is a Delaware limited liability company which conducts business within the geographical boundaries of the Southern District of Indiana. Renaissance was originally formed in Louisiana as UTC Laboratories, L.L.C., but reorganized as Renaissance RX in the state of Delaware only days before receiving a multi-million dollar investment from Defendant, TPG Growth, LLC ("TPG").

3. Defendant, UTC Laboratories, L.L.C. ("UTC"), is a Delaware limited liability company which conducts business within the geographical boundaries of the Southern District of Indiana. Renaissance was originally formed in Louisiana as UTC Laboratories, L.L.C., but reorganized as Renaissance RX in the state of Delaware only days before receiving a multi-million dollars investment from TPG.

4. Defendant TPG is a Delaware limited liability company that owns twenty percent of Renaissance.

5. Defendant, Dr. Tarun Jolly ("Jolly"), is an individual who resides in New Orleans, Louisiana. Jolly is the founder of Renaissance and one of its three principal officers. Upon information and belief, Jolly is an owner/member of Renaissance. .

6. Defendant, Barry Griffith ("Griffith"), is a resident of New Orleans, Louisiana and one of Renaissance's managing partners. Upon information and belief, Griffith is an owner/member of Renaissance.

7. Defendant, Patrick Ridgeway ("Ridgeway"), is a resident of Jackson, Mississippi and one of Renaissance's managing partners. Upon information and belief, Ridgeway is an owner/member of Renaissance.

8. Defendant, Doug Terry ("Terry"), is a resident of Charlotte, North Carolina and Adams' former supervisor at Renaissance.

9. This action is based upon the unlawful discrimination, harassment and retaliatory discharge of Plaintiff and the violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(b), and the state anti-kickback statute.

10. This Court's jurisdiction over this matter is based upon a federal question. 28 U.S.C. § 1331. Specifically, this matter arises from the deprivation of Plaintiff's rights secured by the ADEA and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(b), which prohibit employment discrimination based upon age and sex, respectively. This Court also has supplemental jurisdiction over Plaintiff's state law retaliatory discharge and anti-kickback violations claims pursuant to 28 U.S.C. § 1367.

11. The events giving rise to this action occurred in the Southern District of Indiana, thereby rendering venue in this Court proper pursuant to 29 U.S.C. § 1391(b).

12. All conditions precedent to jurisdiction have been satisfied. On December 29, 2014, Adams filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 470-2015-00868 ("the Charge"). On June 5, 2015, the EEOC issued Adams a Notice of Right to Sue ("Notice") based on the allegations in the Charge. Copies of the Charge and the Notice are attached hereto as Exhibit A.

## **Facts Common to All Counts**

13. Adams commenced employment with Renaissance on January 22, 2014. Adams was employed in the position of Territory Manager in Indiana.

14. On or around July 1, 2014, Adams was promoted to Territory Manager. Throughout that time, her supervisors—Brian George and Sarjit Patel—raved about Adams' work ethic and successful sales record.

15. On or around September 15, 2014, Adams was transferred to a different region under the supervision of Terry. Immediately thereafter, Adams began experiencing disparate treatment and harassment based upon her age and sex.

16. Terry preferred young attractive women to serve as his sales representatives. In fact, Terry was obsessed with young attractive women and engaged in a pattern of harassing behavior designed to force Adams to resign from her position.

17. Terry's clear preference for younger female employees is illustrated in at the least the following ways:

a. During a meeting, Terry informed Adams that his young sales representatives were doing extremely well, but Adams was not.

b. On one occasion, Terry forced Adams to ask for the business cards of two women that he claimed to be pharmaceutical sales representatives at a potential customer's office. When asked how he knew the women were sales representatives, Terry responded by stating that "they are young and good looking girls."

c. On another occasion, Terry repeatedly commented about the "young and cute" girls that he saw in the parking lot.

d. Terry commented that the one thing he missed about working for a pharmaceutical company was working with "all of the cute, young, hot girls."

e. On multiple occasions, Terry informed Adams how well the younger sales representatives Terry worked with were doing compared to Adams, even though they were not enjoying any better success than Adams.

f. Terry informed Adams about a recent hire that was only 25 years old and commented that "he loves people of that age because they will do anything he tells them."

g. During a dinner meeting that took place on October 28, 2014, Terry told Adams a story about screaming at a new young sales representative. Terry said it was "worth it" and that he "just loves these young reps.," and again made comments about how Terry prefers younger sales representatives and prefers working with younger people because "they do whatever [he] tell[s] them."

h. During the same dinner meeting, Terry aggressively recruited the young, blonde and attractive server to send her resume despite having no knowledge of her qualifications to serve as a sales representative.

i. Terry repeatedly yelled at Adams in a belittling and demeaning way and kept saying to her: "just quit…you need to quit" … "you are not going to be able to work…"

18. Terry's constant expression of his preference for young attractive females created an unprofessional and hostile work environment for Adams. Terry would make odd statements about placing naked photos on corporate computers, belittle Adams in public and scream and cuss at her in front of potential customers in an effort to create a hostile work environment for Adams and force her resignation so that he could hire a younger, attractive female employee.

19. Terry's unlawful conduct extended beyond age and sex discrimination into the realm of Medicare fraud. During Adams' training, Terry would enter potential customers' offices with Adams. When the doctors at such potential customers' offices were not present, Adams would leave a folder of information with the receptionist. Terry, however, would then ask the receptionist to make a note on the folder that informed the doctor that Renaissance was part of a clinical trial and partnering with Medicare and that financial incentives were available to the doctors if they participated.

20. Terry communicated these messages with the intent of conveying to the doctors that they would receive compensation for using Renaissance's products, which violates the Indiana Anti-Kickback Statute.

21. Adams voiced her opposition to Terry's scheme to deceive doctors by conveying to them that they would receive compensation for using Renaissance's products. Terry, however, informed Adams of his methods for circumventing federal Medicare regulations and made statements to Adams that led Adams to believe that if she did not participate in this fraudulent scheme, Terry would look down upon Adams and would receive negative reviews.

22. On October 30, 2014, Terry terminated Adams' employment with Renaissance without any valid or justifiable basis. According to Terry, Adams' employment was "just not going to work." Up to that point, Adams had received multiple positive remarks from her previous supervisors and was performing successfully. Terry had not commented on Adams' work performance and her performance had been impeccable up to the point that she began working with Terry.

23. Terry terminated Adams' employment with Renaissance because she was not the young, blonde, stereotypical pharmaceutical sales representative that Terry preferred to work for him and voiced her opposition to Renaissance's fraudulent scheme that involved violations of federal Medicare regulations. As such, Adams received disparate treatment, was subject to harassment and ultimately terminated due to her age, sex and refusal to participate in unlawful conduct.

24. Adams was qualified for the position she held with Renaissance, and at all times during her employment, she performed her job duties and responsibilities in a satisfactory manner.

25. At no point during Adams' employment had she been the subject of any disciplinary action or received any negative feedback regarding her job performance.

**Count I: Violation of ADEA—Age Discrimination/Harassment**

26. Adams repeats and incorporates by reference the allegations set forth in paragraphs 1 through 25 as if fully set forth herein.

27. Renaissance and Terry have discriminated against Adams because of her age in that similarly-situated, substantially younger individuals were allowed better terms, conditions and privileges in employment.

28. Adams was subject to a hostile work environment as a result of a pattern of harassing behavior and disparate treatment due to her age, as she was not the young, blonde, stereotypical pharmaceutical sales representative that Terry preferred.

29. Adams was qualified for her position with Renaissance and satisfactorily performed her job duties and responsibilities throughout her entire employment with Renaissance.

30. Adams suffered adverse employment actions, including but not limited to disparate treatment and a hostile work environment in the conditions of her employment and termination of employment based upon her age.

31. Renaissance acted willfully, intentionally and with reckless disregard for Adams' rights in violation of the ADEA, 29 U.S.C. § 621 *et seq*.

32. As a result of Renaissance's age discrimination, harassing behavior and unlawful termination of Adams' employment, Adams has suffered substantial damages.

33. Renaissance knew or should have known that Terry was engaging in unlawful action.

34. In addition, Terry was a supervisor with the authority to effect significant change in Adams' employment status and, therefore, Renaissance is likewise liable for Terry's action.

WHEREFORE, Plaintiff, Melanie Adams, respectfully requests judgment in her favor and against Defendants, compensation for all damages resulting from Defendants' violations of the Age Discrimination in Employment Act, punitive damages, attorneys' fees and costs and all other just and proper relief.

**Count II: Violation of Title VII of the Civil Rights Act of 1964—Sexual Harassment/Discrimination**

35. Adams repeats and incorporates by reference the allegations set forth in paragraphs 1 through 33 as if fully set forth herein.

36. As a female, Adams is a member of a protected class.

37. Adams was qualified for her position with Renaissance and satisfactorily performed her job duties and responsibilities throughout her entire employment with Renaissance.

38. Renaissance and Terry have engaged in unlawful employment practices, in violation of Section 703(b) of Title VII, 42 U.S.C. § 2000e-2(b), by hiring and terminating employees based upon sex. Specifically, Renaissance and Terry have engaged in a pattern or practice of sex discrimination by selecting Renaissance's employees based upon their meeting certain sexual standards, which are young, attractive and female.

39. Adams suffered adverse employment actions, including but not limited to disparate treatment and a hostile work environment in the conditions of her employment and termination of employment under circumstances giving rise to an inference of discrimination based upon Adams' sex. Indeed, Adams was subject to disparate treatment, a hostile work

environment and was terminated from Renaissance because she is not the young attractive female that Renaissance and Terry prefer for Renaissance's sales representative positions.

40. Adams was subjected to a hostile work environment and disparate treatment throughout the course of her employment and was ultimately terminated from her employment as a result of the pattern or practice of Renaissance's and Terry's discrimination based upon sex, which is described in paragraphs 30 and 31 above, while the similarly-situated, young attractive female employees who enjoyed less success than Adams were allowed better terms, conditions and privileges in employment.

41. On October 30, 2014, Renaissance unlawfully discharged Adams on the basis of her sex in violation of Title VII.

42. Renaissance knew or should have known that Terry was engaging in unlawful action.

43. In addition, Terry was a supervisor with the authority to effect significant change in Adams' employment status and, therefore, Renaissance is likewise liable for Terry's action.

44. Renaissance acted willfully, intentionally and with reckless disregard for Adams' rights in violation of Title VII of the Civil Rights Act of 1964.

45. As a result of Renaissance's sex discrimination, harassing behavior and unlawful termination of Adams' employment, Adams has suffered substantial damages.

WHEREFORE, Plaintiff, Melanie Adams, respectfully requests judgment in her favor and against Defendants, compensation for all damages resulting from Defendants' violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(b), punitive damages, attorneys' fees and costs and all other just and proper relief.

**Count III: Violation of Indiana Anti-Kickback Statute—Retaliatory Discharge**

46. Adams repeats and incorporates by reference the allegations set forth in paragraphs 1 through 42 as if fully set forth herein.

47. Renaissance's and Terry's termination of Adams' employment in retaliation for refusing to participate in an illegal act, such as Medicare fraud, is against the public policy of the State of Indiana.

48. Renaissance and Terry had been violating the Indiana Anti-Kickback Statute, Ind. Code § 12-15-24-2, by soliciting offers and/or receiving a kickback in connection with the furnishing of its products.

49. Renaissance and Terry terminated Adams in retaliation because she voiced her opposition and refused to participate in conduct by Defendants in furtherance of their conspiracy to commit Medicare fraud. In terminating Adams for this reason, Renaissance and Terry violated the State of Indiana's mandated public policy and its Anti-Kickback Statute.

50. Renaissance's and Terry's unlawful discharge of Adams' employment was done willfully and with complete disregard for Adams' rights.

51. As a result of the unlawful discharge, Adams has been humiliated and has suffered substantial damages, including but not limited to lost wages and lost employment benefits.

WHEREFORE, Plaintiff, Melanie Adams, respectfully requests judgment in her favor and against Defendants, compensation for all damages resulting from Defendants' violations of Ind. Code § 12-15-24-2, punitive damages, attorneys' fees and costs and all other just and proper relief.

**Count IV: Piercing the Corporate Veil**

52. Adams repeats and incorporates by reference the allegations set forth in paragraphs 1 through 48 as if fully set forth herein.

53. Prior to joining Renaissance, Griffith, Ridgeway and Dr. Karthikeshwar Kasirajan ("Kasirajan") were employed by Natural Molecular Testing Corporation ("Natural Molecular"), which was a laboratory that had offered pharmacogenomic testing—the type of genetic testing used to determine response to medication. Natural Molecular had established a national registry in 2012.

54. By August 2012, after Medicare had paid Natural Molecular tens of millions of dollars for various genetic tests, the agency's fraud contractor began reviewing Natural Molecular's billing. In 2013, a separate private lawsuit raised questions about the payments that Natural Molecular was making to physicians to be part of its registry.

55. In April 2013, Medicare suspended all reimbursements, citing "credible allegations of fraud." Natural Molecular filed bankruptcy in October 2013 after Medicare had unearthed signs of potential fraud, including billing patients for tests to determine a genetic sensitivity to warfarin, a blood thinner, when the patients were not on the drug. Nonetheless, by that time, Griffith, Ridgeway and Kasirajan of Natural Molecular had already joined Jolly at Renaissance.

56. Renaissance's executives, Jolly, Griffith and Ridgeway, needed Medicare's approval so that the agency would pay for Renaissance to enroll patients in the Diagnosing Adverse Drug Reactions Registry ("DART"), which is a study designed to determine a patient's genetic sensitivity to a wide variety of drugs. In light of the Medicare fraud investigations undergone by Natural Molecular at the time, Jolly, Griffith, Ridgeway and Kasirajan, fearing that

they would have a difficult time obtaining Medicare approval, conspired with Dr. Mitchell Burken ("Burken") at Novitas Solutions, the local Medicare contractor for clinical laboratories in Louisiana, to obtain such approval despite the investigation of Natural Molecular.

57. In furtherance of the conspiracy, Renaissance representatives indicated that they were approved by Medicare and began engaging in fraudulent behavior by using improper medical codes to process as many cheek swab samples as possible without concern for whether a patient was eligible for either the study or for reimbursement through Medicare.

58. Renaissance intended to push volume as it generated revenue by and through each swab it conducted within the context of Dart, including but not limited to the use of erroneous and/or fraudulent codes on the eCRFs to fraudulently bill the conduct of the trial to Medicare/Medicaid.

59. In furtherance of the conspiracy, Renaissance leased office space at the New Orleans BioInnovation Center. After securing profits as a result of the fraudulent scheme, Renaissance made a series of hires, including a new head of its lab operations and a chief financial officer. Also, Jolly made the decision to create 425 high-paying jobs and move to a larger headquarters.

60. In October 2014, Medicare stopped payments to Renaissance. In November 2014, in furtherance of the conspiracy, TPG agreed to invest and UTC and Renaissance agreed to accept Fifty-five Million Dollars ($55,000,000.00) for twenty percent of Renaissance.

61. Jolly made promises and assurance to Plaintiff, other Renaissance employees and executed certain written documents on behalf of Renaissance.

62. UTC and Renaissance were created by Jolly, Griffith and Ridgeway in furtherance of the conspiracy to obtain funds from TPG, commit Medicare fraud and to escape liability.

63. Jolly, Griffith and Ridgeway received monies which were the same as if due Renaissance, UTC and TPG.

64. Upon information and belief, Jolly, Griffith and Ridgeway used Renaissance, UTC and TPG as their alter egos as part of and in furtherance of their conspiracy to commit Medicare fraud and avoid detection and liability for the wages, monies and damages owed to Plaintiff.

65. Upon information and belief, the corporate form has been so ignored, controlled or manipulated by Jolly, Griffith and Ridgeway that Renaissance, UTC and TPG were a mere instrumentality of Jolly, Griffith and Ridgeway and that such misuse of the corporate form was used to promote an injustice against Plaintiff.

66. Renaissance's termination of Adams' employment for refusing to participate in this Medicare fraudulent scheme is against public policy and a violation of Ind. Code § 12-15-24-2, commonly known as the Indiana Anti-Kickback Statute.

67. Renaissance and Terry had been violating the Indiana Anti-Kickback Statute by knowingly and willfully soliciting and/or receiving remuneration (including any kickback) directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing Renaissance's products for which payment would be made under Medicare.

68. Renaissance and Terry terminated Adams because she voiced her opposition and refused to participate in conduct by Defendants in furtherance of their conspiracy to commit

Medicare fraud. In terminating Adams for this reason, Renaissance and Terry violated the Anti-Kickback Statute.

69. Renaissance's and Terry's unlawful discharge of Plaintiff's employment was done willfully and with complete disregard for Plaintiff's rights.

70. Upon information and belief, Jolly, Griffith and Ridgeway failed to observe the required corporate formalities, including but not limited to the proper handling of Renaissance, UTC and TPG corporate organization, records, funds and monies.

71. Defendants, Renaissance RX, UTC Laboratories, L.L.C., TPG Growth, LLC, Dr. Tarun Jolly, Barry Griffith, and Patrick Ridgeway, should be treated as one entity to prevent them from using the corporate fiction as a tool to inflict fraud upon Plaintiff and others.

72. The corporate fiction of Defendants, Renaissance RX, UTC Laboratories, L.L.C., TPG Growth, LLC, Dr. Tarun Jolly, Barry Griffith and Patrick Ridgeway, should be disregarded because they have been used as part of an unfair device to achieve an inequitable result.

73. The corporate fiction should be disregarded because the fiction was used as a means of perpetrating Medicare fraud, to circumvent a statute and was relied upon as a protection to justify a wrong.

74. The corporate structure should not shield fraud, evasion of existing obligations, circumvention of statute and the like. This abuse necessitates disregarding the existing of Defendants, Renaissance RX, UTC Laboratories, L.L.C., TPG Growth, LLC, Dr. Tarun Jolly, Barry Griffith and Patrick Ridgeway, as separate entities. As such, the corporate veil of Defendants, Renaissance RX, UTC Laboratories, L.L.C., TPG Growth, LLC, Dr. Tarun Jolly, Barry Griffith and Patrick Ridgeway, should be pierced to provide that Defendants, Renaissance

RX, UTC Laboratories, L.L.C., TPG Growth, LLC, Dr. Tarun Jolly, Barry Griffith and Patrick Ridgeway are jointly and severally liable to Plaintiff for the damages recovered by Plaintiff.

WHEREFORE, Plaintiff, Melanie Adams, respectfully requests the Court to find that Defendants, Renaissance RX, UTC Laboratories, L.L.C. and TPG Growth, LLC, are the alter egos of Defendants, Dr. Tarun Jolly, Barry Griffith and Patrick Ridgeway; pierce the corporate veil and enter judgment against Defendants, Dr. Tarun Jolly, Barry Griffith and Patrick Ridgeway, individually in an amount to be determined at a trial, compensation for all damages resulting from Defendants' unlawful conduct, punitive damages, attorneys' fees and costs; and all other just and proper relief in the premises.

## EXEMPLARY DAMAGES

75. Adams repeats and incorporates by reference the allegations set forth in paragraphs 1 through 71 as if fully set forth herein.

76. Adams seeks exemplary damages for the acts which were committed willfully, maliciously and intentionally by Defendants. The acts were specifically intended to cause substantial damages to Plaintiff, were carried out with a flagrant disregard for Plaintiff's right and were with actual awareness that such action would, in all reasonable probability, result in substantial damages to Plaintiff.

WHEREFORE, Plaintiff, Melanie Adams, seeks an award of exemplary damages in an amount to be determined by the trier of fact in addition to the compensation for all damages resulting from Defendants' unlawful conduct, punitive damages, attorneys' fees, costs and all other just and proper relief for which Plaintiff is entitled as a result of the above-described allegations.

**JURY DEMAND**

Plaintiff, Melanie Adams, by counsel, respectfully requests a trial by jury on all issues and causes of action asserted herein.

Respectfully submitted,

DELK McNALLY LLP

/s/Jason R. Delk
Jason R. Delk, Atty. No. 24853-18
Daniel J. Gibson, Atty. No. 27113-18
Arie J. Lipinski, Atty. No. 30739-64
*Attorneys for Plaintiff*

DELK McNALLY LLP
421 S. Walnut
Suite 200
Muncie, IN 47305
Tel: (765) 896-9495
Fax: (888) 453-0545